# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:17-CR-00310 |
| v. | (Judge Brann) |
| HAKIM HANDY, | |
| Defendant. | |

## MEMORANDUM OPINION

**MAY 6, 2021**

**I.     BACKGROUND**

In 2017, Hakim Handy was indicted for conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 846, two counts of distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1), possession with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and possession of ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).[1] A superseding indictment was later filed that contained the same charges.[2]

The Government filed a notice, in accordance with 21 U.S.C. § 851, that it intended to seek enhanced criminal penalties pursuant to 21 U.S.C. § 841(b)(1)(A) based upon Handy's prior convictions—specifically, three convictions for violating Pennsylvania's controlled substance laws, 35 Pa. Stat. Ann. § 780-113(a)(30) (West

---

[1]    Doc. 1.
[2]    Doc. 42.

2014).[3] This notice had the effect of potentially increasing both the minimum and maximum statutory penalties for the charged offenses.[4]

During jury selection for Handy's criminal trial, Handy entered into a written plea agreement with the Government.[5] Handy agreed to plead guilty to conspiracy to distribute a controlled substance, and the Government agreed to dismiss the four remaining counts contained in the superseding indictment.[6] The plea agreement noted that Handy's crime of conviction carried a mandatory minimum term of ten years' imprisonment, with a maximum penalty of life imprisonment.[7]

The Court ultimately accepted the guilty plea, and a Presentence Report (PSR) was prepared.[8] The PSR determined that, during the conspiracy, Handy was responsible for the marijuana equivalency of 472.04 kilograms and, thus, calculated a base offense level of 26.[9] However, the PSR recommended that, based upon his prior convictions, Handy be classified as a career offender, which increased the offense level to 37;[10] this, along with a two-level reduction for acceptance of responsibility, resulted in a total offense level of 35.[11] The career offender recommendation was driven by Handy's prior Pennsylvania state court convictions

---

[3] Doc. 9.
[4] Id.
[5] Doc. 54.
[6] Id.
[7] Id. at 2-3.
[8] Docs. 58, 63.
[9] Doc. 63 at 5; U.S. Sentencing Guidelines Manual § 2D1.1(a)(5) (2016).
[10] Doc. 63 at 5; USSG § 4B1.1(b)(1).
[11] Doc. 63 at 6; USSG § 3E1.1(a).

for delivery of cocaine, possession with the intent to deliver cocaine, and delivery of cocaine base.[12] The PSR also detailed Handy's lengthy criminal history, which began when Handy was a juvenile and included serious offenses such as the three aforementioned crimes, two convictions for aggravated assault, fleeing from police and recklessly endangering another person, possession of cocaine, receiving stolen property, and providing false identification to law enforcement.[13] These offenses resulted in twenty criminal history points and a criminal history category VI.[14] The PSR thus calculated an advisory Sentencing Guidelines range of 292 to 365 months' imprisonment.[15]

Handy's attorney initially objected to several portions of the PSR, most notably, the recommendation that Handy was a career offender and the PSR's failure to deduct a third offense level for acceptance of responsibility.[16] Counsel also asserted that a downward departure was warranted based upon Handy's "exceptional lack of support and guidance as a youth, coupled with his early drug use."[17]

At sentencing, the Court sustained the objection to Handy's offense level and granted an additional one level reduction for acceptance of responsibility.[18]

---

[12] Doc. 63 at 9-12.
[13] *Id.* at 7-14.
[14] *Id.* at 14. A criminal history category VI was also mandated because Handy was a career offender. *Id.*; USSG § 4B1.1(b).
[15] Doc. 63 at 18.
[16] Doc. 64 at 1-2.
[17] *Id.* at 2-3.
[18] Doc. 77 at 4-5.

However, Handy's counsel withdrew his objection to the application of the career offender enhancement.[19] After that objection was withdrawn, Handy was asked whether there were any other issues that the Court needed to rule upon before calculating the Sentencing Guidelines range, and Handy replied that there were none.[20] The Court therefore calculated an advisory Sentencing Guidelines range of 262 to 327 months' imprisonment.[21]

Although he withdrew the objection to the career offender enhancement, Handy's attorney argued that a below-Guidelines sentence was appropriate based in part on Handy's difficult childhood.[22] Following Handy's allocution,[23] the Court imposed a sentence of 300 months' imprisonment based primarily on the seriousness of the offense and Handy's lengthy criminal history.[24]

Handy thereafter filed an appeal with the United States Court of Appeals for the Third Circuit in which he "contest[ed] the District Court's application of the career offender designation and its imposition of a sentence above the low end of the advisory Guidelines range."[25] The Third Circuit determined that the sentence imposed "was neither procedurally nor substantively unreasonable" as Handy

---

[19] *Id.* at 5.
[20] *Id.* at 6.
[21] *Id.*
[22] *Id.* at 7-8, 14-15.
[23] *Id.* at 9-11.
[24] *Id.* at 17-20.
[25] *United States v. Handy*, 784 F. App'x 64, 65 (3d Cir. 2019).

qualified as a career offender, and because the relevant sentencing factors adequately supported the sentence imposed.[26]

In 2020, Handy filed this timely 28 U.S.C. § 2255 motion challenging the sentence imposed.[27] Handy contends that this Court violated his Fifth and Fourteenth Amendment rights by applying the career offender enhancement even though his prior state court convictions do not qualify as predicate offenses sufficient to support that enhancement.[28] Handy also argues that he received ineffective assistance of counsel because counsel (1) failed to maintain an objection to the application of the career offender enhancement,[29] (2) informed Handy that his Sentencing Guidelines range would be as low as 84 to 105 months' imprisonment and failed to mention the possibility of a career offender enhancement,[30] and (3) failed to request a postponement of the sentencing hearing due to the death of Handy's mother, and failed to seek a mental health evaluation for Handy.[31]

The Government has responded to Handy's § 2255 motion and asserts that Handy may not collaterally attack the application of the career offender enhancement because this issue was raised, and rejected, in his direct appeal and, in any event, the career offender enhancement was properly applied.[32] The Government

---

[26] *Id.* at 66.
[27] Doc. 83.
[28] *Id.* at 5, 11.
[29] *Id.* at 4, 9-10, 11-12.
[30] *Id.* at 6-7.
[31] *Id.* at 8.
[32] Doc. 91 at 12-18.

further argues that Handy has presented no facts that would support his claim that counsel performed deficiently by failing to request a continuance of the sentencing hearing.[33] This matter is now ripe for disposition and, for the following reasons, the Court will deny Handy's motion.

## II. DISCUSSION

Handy's claims fall into two broad categories: a claim that this Court violated his rights by applying the career offender enhancement, and claims of ineffective assistance of counsel.

### A. The Court's Application of the Career Offender Enhancement

Handy asserts that this Court violated his rights by applying the career offender enhancement despite the fact that his prior convictions do not qualify as predicate offenses sufficient to support that enhancement.[34] Regardless of the merits of this claim, this issue is not appropriately raised in this § 2255 motion for two reasons.

First, as noted previously, Handy filed a direct appeal and challenged his sentence before the Third Circuit, "contest[ing] the District Court's application of the career offender designation and its imposition of a sentence above the low end of the advisory Guidelines range."[35] The Third Circuit rejected Handy's argument

---

[33] *Id.* at 18-19.
[34] *Id.* at 5, 11.
[35] *Handy*, 784 F. App'x at 65.

and determined that the sentence imposed "was neither procedurally nor substantively unreasonable."[36]

It is beyond peradventure that "as a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal."[37] Accordingly, the Third Circuit has repeatedly held that "issues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion."[38] Moreover, even where an issue is not raised on direct appeal, "issues which should have been raised on direct appeal may not be raised with a § 2255 motion."[39] Here, because Handy raised issues regarding the application of the career offender enhancement on direct appeal—and his claim was rejected—he may not pursue such a claim in his § 2255 motion.

Second, even if Handy's claim were not barred by the prohibition against relitigating claims that were raised on direct appeal, his claim is not cognizable in a § 2255 motion. The Third Circuit has held "that an incorrect career-offender enhancement under the advisory guidelines is not cognizable under § 2255 because it is not a fundamental defect that inherently results in a complete miscarriage of justice."[40] The only exceptions that would render a sentence unlawful and, thus, a complete miscarriage of justice, occur where a court fails to "consider[] the [18

---

[36] *Id.* at 66.
[37] *Foster v. Chatman*, 136 S. Ct. 1737, 1758 (2016) (Alito, J., concurring).
[38] *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014).
[39] *Id.* at 288 n.11.
[40] *United States v. Folk*, 954 F.3d 597, 604 (3d Cir.), *cert. denied*, 141 S. Ct. 837 (2020).

U.S.C.] § 3553(a) factors [or] imposes a sentence [outside] the statutory limits for an offense."[41]

Here, as the Third Circuit acknowledged, in imposing sentence the Court considered the relevant § 3553(a) sentencing factors,[42] and the sentence imposed was within the statutory limits, as Handy's crime of conviction carried a maximum sentence of life imprisonment.[43] Handy's claim that the Court incorrectly applied the career offender enhancement is therefore not cognizable in a § 2255 motion.

B. **Ineffective Assistance of Counsel**

Handy next argues that he received ineffective assistance of counsel because counsel (1) failed to maintain an objection to the application of the career offender enhancement,[44] (2) informed Handy that his Sentencing Guidelines range would be as low as 84 to 105 months' imprisonment and failed to mention the possibility of a career offender enhancement,[45] and (3) failed to request a postponement of the sentencing hearing due to the death of Handy's mother, and failed to seek a mental health evaluation for Handy.[46]

"In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims."[47]

---

[41] *Id.* at 605.
[42] *Handy*, 784 F. App'x at 66.
[43] 21 U.S.C. §§ 841(b)(1)(A), 846.
[44] *Id.* at 4, 9-10, 11-12.
[45] *Id.* at 6-7.
[46] *Id.* at 8.
[47] *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015).

"The first part of the *Strickland* test requires 'showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"[48] In determining whether an attorney's performance is deficient, courts must "determine whether, in light of all the circumstances, the [attorney's] acts or omissions were outside the wide range of professionally competent assistance."[49] As the United States Supreme Court has emphasized:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[50]

"The second part [of the *Strickland* test] specifies that the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[51] "This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable."[52] "In the

---

[48] *Id.* (quoting *Strickland*, 466 U.S. at 687).
[49] *Strickland*, 466 U.S. at 690.
[50] *Id.*
[51] *Bui*, 795 F.3d at 366 (quoting *Strickland*, 466 U.S. at 694).
[52] *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks omitted).

9

context of a guilty plea, the prejudice prong of the test requires a showing 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'"[53]

As to Handy's assertion that counsel was ineffective for failing to maintain an objection to the career offender enhancement,[54] that claim is meritless, as he can establish neither deficient performance nor prejudice. First, counsel reasonably did not pursue an objection to the career offender designation because, under then-existing case law, Handy clearly qualified as a career offender.

The 2016 Sentencing Guidelines provide that an individual is a career offender

> if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.[55]

The Sentencing Guidelines define a controlled substance offense as any federal or state crime that is "punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or

---

[53] *United States v. Fazio*, 795 F.3d 421, 426 (3d Cir. 2015) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)).
[54] Doc. at 4, 9-10, 11-12.
[55] USSG § 4B1.1(a).

a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."[56]

At the time of Handy's sentencing, his crime of conviction undoubtedly qualified as a predicate offense, as he was over the age of 18 at the time that he committed the offense,[57] the offense was punishable by more than one year imprisonment,[58] and the offense was a controlled substance offense.[59] Moreover, Handy had three prior convictions in Pennsylvania state court for drug offenses: one for delivery of cocaine, one for possession with intent to deliver cocaine, and one for delivery of cocaine base, all in violation of 35 Pa. Stat. Ann. § 780-113(a)(30) (West 2014).[60] These three convictions "may serve as . . . predicate offense[s] to a career-offender enhancement under [USSG] § 4B1.1."[61] Thus, at the time of Handy's sentencing, it was clear that he qualified as a career offender.

It must be acknowledged that is now likely that Handy no longer qualifies as a career offender. Nevertheless, at the time of Handy's sentencing, it was long established in the Third Circuit that "a defendant convicted of conspiracy to distribute a controlled dangerous substance [pursuant to 21 U.S.C. § 846] is subject

---

[56] USSG § 4B1.2(b).
[57] Doc. 63 at 2.
[58] 21 U.S.C. §§ 841(b)(1)(A), 846.
[59] *See, e.g.*, *United States v. Rock*, 821 F. App'x 131, 132 (3d Cir. 2020) (concluding that individual convicted under 21 U.S.C. § 846 qualified as career offender); *United States v. Pacheco-Morales*, 703 F. App'x 116, 119 n.4 (3d Cir. 2017) (noting that an offense under 21 U.S.C. § 846 is a "controlled substance offense[]").
[60] Doc. 63 at 9-12; Doc. 70 at 9-67.
[61] *United States v. Glass*, 904 F.3d 319, 324 (3d Cir. 2018).

to the career offender provisions of the U.S. Sentencing Guidelines."[62] That precedent controlled all sentences within the Third Circuit for more than two and one-half decades and was the governing law at the time of Handy's trial.

However, in December 2020—more than two years after Handy was sentenced—the Third Circuit, sitting en banc, overruled its prior decision and "conclude[d] that inchoate crimes are not included in the definition of 'controlled substance offenses' given in section 4B1.2(b) of the sentencing guidelines."[63] That decision was in turn driven by the United States Supreme Court's 2019 decision in *Kisor v. Wilkie*,[64] a decision that interpreted the deference owed to agency interpretations of regulations, wherein the Supreme determined that "the degree of deference to be given an agency's interpretation of its own regulations is now context dependent."[65] This decision made "clear" to the Third Circuit that its old opinion interpreting the Sentencing Guidelines commentary was incorrect.[66] Thus, Handy's crime of conviction, one that centered around a conspiracy, is likely no longer a predicate offense sufficient to support a career offender enhancement.[67]

---

[62] *United States v. Hightower*, 25 F.3d 182, 183 (3d Cir. 1994), *overruled by United States v. Nasir*, 982 F.3d 144 (3d Cir. 2020) (en banc).
[63] *Nasir*, 982 F.3d at 160.
[64] 139 S. Ct. 2400 (2019).
[65] *Nasir*, 982 F.3d at 159.
[66] *Id.* at 158.
[67] *See id.* at 157 n.10 ("Inchoate offenses include, for example, the attempt, conspiracy, or solicitation to commit a crime").

That does not lead inexorably, however, to the conclusion that Handy's counsel was ineffective in failing to predict that change in the law. To the contrary, the Third Circuit has made clear "that failing to predict a change in the law is not deficient performance."[68] This is especially true here, where layers of post-sentencing case law merged to overturn precedent upon which counsel could reasonably have relied at sentencing. To have predicted that change in law, counsel would have needed to keep abreast on Supreme Court cases in administrative law—which is outside of his area of expertise—on the chance that those cases may impact criminal law. This would be especially difficult given that the petition for a writ of certiorari in *Kisor* was not granted by the Supreme Court until December 10, 2018, after Handy was sentenced.[69] In light of this, the Court concludes that counsel did not perform deficiently in failing to maintain an objection to the career offender enhancement, as there was no "existing case law calling into doubt whether [a conviction under 21 U.S.C. § 846] qualified as a [controlled substance offense] for sentence enhancement purposes."[70]

Moreover, the Court discerns no prejudice from counsel's decision to withdraw the objection to the career offender enhancement. Although Handy asserts that counsel "withdrew his motion to argue my career offender status without my knowledge" and Handy would not have pled guilty had he been informed "about the

---

[68] *United States v. Doe*, 810 F.3d 132, 154 (3d Cir. 2015).
[69] *Kisor v. Wilkie*, 139 S. Ct. 657 (2018).
[70] *United States v. Otero*, 502 F.3d 331, 336 (3d Cir. 2007).

potential of me being careered,"[71] at sentencing counsel explicitly stated that he was withdrawing the objection to the career offender enhancement and, when the Court asked Handy whether he "agree[d] with [counsel] that there are no remaining issues that I need to rule on today before I calculate the appropriate advisory guideline range," Handy agreed that there were no issues upon which the Court needed to rule.[72] Shortly thereafter, Handy delivered a somewhat lengthy allocution and raised no concerns regarding the withdrawn objection, or the Sentencing Guidelines calculation performed by this Court.[73] In light of this evidence, Handy's "self-serving and uncorroborated claims" that he would not have pled guilty had he been aware of the possibility of a career offender enhancement, or of counsel's decision to withdraw an objection to that enhancement, ring hollow.[74] Consequently, the Court finds neither deficient performance nor prejudice resulting from counsel's failure to object to the career offender enhancement.

Finally, Handy argues that counsel was ineffective for failing to request a postponement of the sentencing hearing due to the death of Handy's mother, and for

---

[71] Doc. 83 at 4.
[72] Doc. 77 at 5-6.
[73] *Id.* at 9-11.
[74] *United States v. James*, 928 F.3d 247, 258-59 (3d Cir. 2019). Similarly, the Court rejects as incredible Handy's assertion that counsel was ineffective because he assured Handy that he would receive a sentence "between the guidelines of 84-105 months at the most 120-151 months." Doc. 83 at 6-7. Handy's crime of conviction carried a mandatory minimum term of 120 months' imprisonment, as was made clear in the plea agreement that he signed. Doc. 54 at 3. It strains credulity to believe that counsel promised a Sentencing Guidelines range—and a sentence—that fell below the mandatory minimum term of imprisonment. The Court therefore rejects this claim.

14

failing to seek a mental health evaluation for Handy.[75] Again, Handy fails to establish either deficient performance or prejudice.

First, although Handy argues that he was "unstable mentally" during the sentencing hearing due to the recent death of his mother,[76] the record does not bear out this assertion. During sentencing, Handy never mentioned any mental health issues that could disrupt his ability to participate in sentencing. To the contrary, although Handy discussed the death of his mother and grandmother while he was incarcerated, Handy's allocution was cogent and provided numerous reasons why Handy felt a lighter sentence was appropriate.[77] There is simply no indication that Handy's mental capacity was compromised, that his attorney "tricked" him into saying yes to certain questions,[78] or that Handy suffered from any long-standing mental health issues that counsel should have investigated.[79]

Moreover, even if the Court accepted as true Handy's assertion that during sentencing he was suffering from extreme mental anguish due to the death of his mother, Handy has not alleged—let alone demonstrated—that counsel knew of this mental anguish. Without knowing that Handy was not "rational" at the time of sentencing due to the death of his mother,[80] counsel could not reasonably be

---

[75] Doc. 83 at 8.
[76] *Id.*
[77] Doc. 77 at 9-11.
[78] Doc. 83 at 8.
[79] This is borne out by the information contained in the PSR, which notes that Handy has no history of mental or emotional problems. Doc. 63 at 17.
[80] Doc. 83 at 8.

expected to have asked for a continuance of the sentencing hearing. Therefore, the evidence does not establish that counsel performed deficiently.

Second, there is no evidence—or even allegation from Handy—of prejudice arising from counsel's failure to request a continuance of the sentencing hearing. Handy does not explain what he may have done differently had the sentencing hearing been postponed, or how failing to postpone the sentencing hearing impacted the proceeding, or the sentence imposed, in any way. The Court therefore concludes that there is no evidence that counsel's actions caused Handy any prejudice, and this claim likewise fails.

### C. Certificate of Appealability

Because the Court will deny Handy's § 2255 motion, this decision is not appealable unless this Court or a circuit justice issues a certificate of appealability.[81] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."[82] To satisfy this standard Handy must demonstrate that reasonable jurists would find that the Court's assessment of the constitutional claim is debatable or wrong.[83] The Court finds that Handy has not met this burden, and therefore declines to issue a certificate of appealability.

---

[81] 28 U.S.C. § 2253(c)(1)(B).
[82] *Id.* § 2253(c)(2).
[83] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Handy's claims are without merit or are not cognizable in a 28 U.S.C. § 2255 proceeding. Accordingly, Handy's 28 U.S.C. § 2255 motion will be denied. The Court will also deny a certificate of appealability.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge